# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **VICTORIA JEAN G.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 20-4053-JWL** |
| **KILOLO KIJAKAZI,**[2] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) evaluation of the prior administrative medical findings of the state agency physicians, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings consistent with this

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

decision and with the regulations controlling the evaluation of prior administrative

medical findings for cases filed on or after March 27, 2017.  20 C.F.R. § 404.1520c.

## I.      Background

Plaintiff protectively filed an application for DIB on January 16, 2018.  (R. 15,

175).  After exhausting administrative remedies before the Social Security

Administration (SSA), Plaintiff filed this case seeking judicial review of the

Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ did

not apply the legal standard correctly, erred in considering the opinions[3] of her physician,

Dr. Veloor, and of the state agency medical consultants, Dr. Eades and Dr. Torres, and

that substantial evidence does not support his findings in this regard.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to

the weight, not the amount, of the evidence.  It requires more than a scintilla, but less

---

[3] The opinions expressed by state agency medical and psychological consultants during the consideration and reconsideration levels of agency review are properly called "prior administrative medical findings."  20 C.F.R. § 404.1513(a)(4) (2019).  But they are considered pursuant to the same standards as medical opinions, id. § 404.1520c, and for simplicity the court hereinafter also refers to them as medical opinions even when citing the current regulatory scheme for evaluating persuasiveness.

than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn the agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses the claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether the claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The decision at issue, that Plaintiff is able to perform her past relevant work as a Project Manager, was made at the fourth step of the sequential evaluation process and the Commissioner did not proceed with step five or present evidence of other work of which Plaintiff is capable.

4

Remand is necessary because the ALJ failed to explain his consistency and supportability evaluation of the medical opinion of the state agency medical consultants. The court may not provide an advisory opinion regarding the ALJ's consideration of Dr. Veloor's opinion.  Plaintiff may make her arguments in that regard to the Commissioner on remand

## II.     Evaluation of the Medical Opinions

Plaintiff claims the ALJ erred in finding the opinions of the state agency medical consultants persuasive.  She argues their opinions are not medical reports but consultant reports and should be found less persuasive because they did not examine Plaintiff; did not explain their analysis; barely mentioned Chronic Regional Pain Syndrome (CRPS), the impairment at issue here; merely based their opinions on a review of the medical records, and did not have all of the records and medical opinions.  (Pl. Br. 13).  Plaintiff enumerates the first four of the five regulatory factors considered in deciding how persuasive a medical opinion is and explains why, in her view, the ALJ erred in considering each factor and how his evaluation did not comply with or failed each "standard."  Id. at 14-15.

Plaintiff explains how, in her view, the evidence should be applied in this case. She argues,

> The ALJ followed the opinions of two doctors who never even examined the Claimant.  They never saw her.  They expressed medical opinions on a medical records review.  Their opinions are not strongly supported by other doctors in the record.  They did not have all the evidence.  They did not consider the RFC opinion of Dr. Veloor.  They do not fully consider the record and the Judge's reliance on these opinions is unsupported.

(Pl. Br. 24).  She argues the opinion of the state agency medical consultants "are just not 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Mays v. Colvin, 739 F.3d 569, 576 (10th Cir. 2014)).  She argues she explained earlier how the consultants' opinions did not properly apply the regulatory factors from 20 C.F.R. 404.1520c and are "simply flawed and not substantial in nature."  Id.  She argues, "The Court's [sic] review is based on the record, and the Court [sic] will 'meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met.'"  Id. (allegedly quoting Mays once again, "Id.").

The Commissioner argues the ALJ reasonably assessed Plaintiff's RFC.  (Comm'r Br. 5-9).  She argues he applied the correct legal standard to evaluate the medical opinions and found the state agency medical consultants' medical opinions persuasive based on the factors of supportability, consistency, and specialization.  Id. at 6-7.  She argues Plaintiff's arguments "weigh" the medical opinions against each other contrary to the current regulations and ask the court to reweigh the evidence, give greater weight to Dr. Veloor's opinion, and find Plaintiff disabled contrary to the standard of substantial evidence review.  Id. at 8 (citing Lax, 489 F.3d at 1084).  She argues the fact the state agency physicians did not review all the medical evidence is immaterial because Dr. Veloor's opinion is the only evidence that Plaintiff's condition worsened after the state agency consultants' review.  Id. at 8-9.  Moreover, she argues the ALJ correctly found Plaintiff's condition improved after the state agency consultants' review due to nerve blocks and physical therapy.  Id.

6

A.      The ALJ's Findings

The ALJ found the opinions of the state agency physicians persuasive.  (R. 23).

He explained his finding:  the opinions are (1) "consistent and [(2)] supported by the

objective findings and treatment records in evidence," the consultants are (3) "familiar

with the disability determination process and the regulations," their opinions are based

(4) "on a comprehensive review of the record" and are (5) "supported by detailed

narratives explaining what evidence they relied upon in reaching their conclusions."  Id.

(numbering added for ease of identification).  He found their "opinions were also

[(6)] consistent with the record that showed the claimant generally exhibited

abnormalities in her left lower extremity, but not in any other areas," and (7) Plaintiff

"was reluctant to use medications to treat her pain."  Id. (numbering added for ease of

identification).  He explained the RFC he assessed was further limited than the

consultants opined because of evidence received after the initial review and

reconsideration.  Id.

The ALJ explained that he found portions of Dr. Zimmerman's independent

medical examination opinion persuasive, and portions unpersuasive.  (R. 23-24).  He

explained he found the opinion Plaintiff should avoid postural functions unpersuasive

because it is inconsistent with and unsupported by the record and cited Plaintiff's

"testimony of activities of daily living, which reasonably require these functions."  Id. at

24.  He found Dr. Zimmerman's opinion on the need to alternate positions and his lifting

limitations persuasive because they are "consistent with the claimant's subjective

complains [sic] of pain after sitting or standing for prolonged periods, and her testimony

that she is unable to lift heavy objects due to instability from her left lower extremity." Id.

The ALJ also considered Dr. Veloor's opinion, found it unpersuasive, and explained his bases for doing so.  Id.  First, he found it "inconsistent with independent medical examiners opinions that indicated on several reports that the claimant had no restrictions." Id. (citing Exs. 2F, 5F/2, 20F, 27F/8 (R. 320-23, 338, 460-470, 694)).  He also found Plaintiff required only conservative treatment for pain management, and that she "reported improvement of pain with the several rounds of sympathetic nerve block injections and physical therapy." Id.

## B.   Analysis

Plaintiff's argument would be more persuasive if it were the court's duty to weigh the evidence and decide de novo the issue of disability.  But the court is specifically prohibited from doing so.  Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172; Bowling, 36 F.3d at 434.  It is the court's duty to determine whether the ALJ applied the correct legal standard, and whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." Perales, 402 U.S. at 401.

As an initial matter, the court finds the ALJ applied the correct legal standard. The ALJ stated he applied the requirements of 20 C.F.R. § 404.1520c in considering the medical opinions (R. 20) and Plaintiff agrees that is the correct standard and that the treating physician rule in 20 C.F.R. § 404.1527 does not apply here because her DIB claim was filed after March 27, 2017.  (Pl. Br. 10).  However, Plaintiff's argument,

8

purporting to "apply" the "standards" of 20 C.F.R. § 404.1520c (Pl. Br. 14-15, 22-2§)

misses the point of the changes between the treating physician rule and the scheme for

evaluating the persuasiveness of medical opinions under 20 C.F.R. § 1520c.

      The treating physician rule had six regulatory factors for <u>weighing</u> each medical

opinion; Examining relationship, Treating relationship, Supportability, Consistency,

Specialization, and Other factors.  20 C.F.R. § 404.1527(c)(1-6).  The current regulatory

scheme provides five regulatory factors (of which supportability and consistency are the

most important) for "evaluat[ing] the persuasiveness" of all the medical opinions of each

source as a unit.  20 C.F.R. § 404.1520c(a, b(1-2)).  Those factors are; Supportability,

Consistency, Relationship with the claimant, Specialization, and Other factors.  <u>Id.</u>

§ 404.1520c(c)(1-5).  As can be seen from these lists, most factors are similar under the

two schemes, and in the current scheme, the factors of Examining relationship and

Treating relationship have been combined into the factor, Relationship with the claimant.

      That, however, is nearly the full extent of the similarities.  The regulation explains

that an ALJ's decision will articulate <u>how persuasive</u> the SSA finds all medical opinions.

20 C.F.R. § 404.1520c(b).  The articulation requirement applies for each source, but not

for each opinion of that source separately.  20 C.F.R. § 404.1520c(b)(1).  It requires that

the SSA "will explain how we considered the supportability and consistency factors for a

medical source's medical opinions," but articulation of how the agency considered

factors 3 through 5 is not required except in certain circumstances not present here.  20

C.F.R. § 404.1520c(b)(2).

Plaintiff's focus on a "correct" application of the regulatory "standard" misses the point of the court's standard of review—whether the ALJ applied the correct legal standard, and whether substantial evidence supports the ALJ's factual findings. Plaintiff acknowledges the ALJ applied 20 C.F.R. § 404.1520c but argues his application was not correct. But once it is determined that the correct legal standard was applied, the question becomes whether substantial evidence in the record supports the <u>ALJ's</u> findings, not whether there is or could have been a "better" or "more correct" application of the standard. Only if the evidence supporting the ALJ's decision is not the type of relevant evidence a reasonable mind would accept as adequate to support a conclusion, or if the evidence <u>compels</u> a different finding (which is essentially the same principle stated differently) may the court find error in the ALJ's finding.

Thus, the court must first look to the ALJ's rationale for finding the medical opinions persuasive or unpersuasive and determine whether it is supported by such relevant record evidence as a reasonable mind might accept as adequate to support a conclusion. If so, the ALJ's rationale must be accepted except when the evidence <u>compels</u> a different finding. That the record evidence might also <u>support</u> a different finding is irrelevant. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).

While Plaintiff does not allege error in the ALJ's evaluation of Dr. Zimmerman's opinion, the court finds it illustrative of a proper explanation of finding persuasive and unpersuasive opinions.  The ALJ explained:

> I find Dr. Zimmerman's opinions that the claimant should totally avoid all postural functions unpersuasive because they are inconsistent and unsupported by the record.  For example, although the claimant reported difficulty climbing stairs or walking without the assistance of [a] cane, she reported the ability to perform these functions.  In addition, although she reported difficulty with orthopedic maneuvers, on examination, the claimant's limitations were primarily related to her left lower extremity.  Thus, while limitations regarding her CRPS and neuropathy in the left lower extremity are reasonable, the opinions that she is never able to perform them is inconsistent with the claimant's own testimony of activities of daily living, which reasonably require these functions.  On the other hand, his opinion that the claimant would require the ability to alternative [sic] positions and his lifting limitations are persuasive because it is [sic] consistent with the claimant's subjective complains of pain [sic] after sitting or standing for prolonged periods, and her testimony that she is unable to lift heavy objects due to instability from her left lower extremity.

(R. 24).  Here, the ALJ explained his reasons for finding portions of the opinion persuasive and portions unpersuasive.  Although he did not cite to the specific record evidence in support of his findings, he noted the evidence upon which he relied, and that evidence is specific, and verifiably supported by the record evidence.

The question remaining is whether substantial evidence supports the ALJ's finding the medical opinions of the state agency physicians are persuasive.  The court finds, based on the relevant legal standard, that it does not.  The ALJ found the state agency medical consultants are (3) "familiar with the disability determination process and the regulations," and their opinions are (4) based "on a comprehensive review of the record" and are (5) "supported by detailed narratives explaining what evidence they relied upon

in reaching their conclusions." (R. 23).  Reason 3 is clearly a correct finding relating to

the specialization of the consultants in disability evaluation, and number 4 is a correct

and valid finding, at least through the date of the reconsideration determination, October

18, 2018.  (R. 94).  That the consultants did not review the evidence received after that

date is of little consequence since the responsibility for assessing RFC is the ALJ's and

he considered all the record evidence.  (R. 15-25) (passim).  Reason 5 is literally correct,

but that is of little assistance in explaining how the consultants' opinions are consistent

with or supported by the record evidence upon which they relied as will be discussed

more fully in considering reasons 1 and 2 below.  The ALJ's reasons 6 and 7, that the

consultants' "opinions were also consistent with the record that showed the claimant

generally exhibited abnormalities in her left lower extremity, but not in any other areas,"

and Plaintiff "was reluctant to use medications to treat her pain," id. at 23, are also

supported by the record evidence.  Moreover, the ALJ appropriately noted that he further

limited the RFC he assessed than the consultants opined because of evidence received

after the initial review and reconsideration.  Id.

Consistency and supportability are the most important factors in considering

persuasiveness of a medical opinion and the ALJ is required to articulate how he

considered these factors in evaluating persuasiveness.  20 C.F.R. § 404.1520c(b)(2).

Based on this requirement, the ALJ's reasons 1 and 2—that the state agency medical

consultants' opinions are "consistent and supported by the objective findings and

treatment records in evidence," id.—are not supported by the record evidence.  This is so

because the ALJ did not cite the evidence which was consistent with and which supported

the consultants' opinions, and although the consultants summarized the evidence they relied upon, they did not explain how their opinion was consistent with or supported by that evidence.  Dr. Eades provided no explanation of where the limitations she opined came from, id. at 72-74, and although Dr. Torres explained that his exertional, postural, and environmental limitations resulted from Plaintiff's CRPS, and peripheral neuropathy, swelling, and pain in her left lower extremity, he did not explain what evidence specifically supported his limitations or why it did not support greater limitations.  Id. 92-94.  Although it would be good for the ALJ to make such citations and explanations himself, that is not to say he must do so or that the consultants must do so.  The problem here is no one did so.  The Commissioner, in her Social Security Brief to this court noted the ALJ's conclusion the consultants' opinions "were largely consistent with the record showing ongoing left leg pain but no other significant limitations" which is substantially identical to reason 6, but she says nothing about why the consultants' specific limitations were correct, why greater limitations are not proper, and why the pain from Plaintiff's CRPS was not so great as to require greater limitations.  Absent an explanation for such ambiguities, and citation to record evidence in support by the ALJ, the consultants, or the Commissioner, which the court might review, the only way for the court to determine whether substantial evidence supports the decision below would be for the court to weigh the evidence de novo and decide the issue itself.  That is prohibited.

Therefore, this case must be remanded for further consideration in accordance with this opinion.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings consistent with this decision and with the regulations controlling the evaluation of prior administrative medical findings for cases filed on or after March 27, 2017.

Dated September 14, 2021, at Kansas City, Kansas.


s:/  *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**